[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
History of Case
This matter was remanded to the trial court to afford the applicant, George G., a hearing to determine whether he is a father under the laws of this state or a former guardian of the minor child, Michelle G.
Michelle G. was born to legally married parents, Latoya G. and George G., on September 1994. Mr. G. is named on the birth certificate as father of said child, and both he and mother believed him to be her father. Michelle was born with drugs in her system; remained in the hospital approximately two (2) weeks; has never resided with Mr. G., and went directly into the care of the maternal grandmother.
On November 28, 1994, the maternal grandmother of child filed an Application for Removal of Guardian, seeking to remove Latoya G. and George G., parents of child, as guardians, on the ground that they had abandoned said child. On March 23, 1995, the Probate Court entered an order removing the parents as guardians, father based on his consent, and mother based on her abandonment of child.
On December 5, 1995, Mr. G. filed a motion for reinstatement of his guardianship in the Probate Court. At that point it had become a contested issue as to whether Mr. G. was in fact the biological father of Michelle. CGS Sec. 45a-611 authorizes the Probate Court to hear an application for reinstatement of guardianship filed by a parent and provides that said court, after a hearing, may reinstate the parent's guardianship "if it determines that it is in the best interests of the minor to do so." The Probate Court was of the opinion that whether or not Mr. G was in fact the biological father of Michelle was an important factor in making it's determination, and on September 13, 1996, ordered paternity testing. There is no statutory provision prohibiting said court from ordering a paternity test or from considering the results of such test in making it's determination as to what is the child's best interest. Further, Mr. G. consented to the paternity test. The test results were received on October 16, 1996, and excluded Mr. G. as the father of Michelle. On November 8, 1996, the Probate Court denied Mr. G.'s application for reinstatement of his guardianship. CT Page 12478
Notwithstanding those proceedings, Mr. G., after an unsuccessful attempt to appeal the Probate Court ruling, filed another application for reinstatement on his guardianship on August 27, 1997, which action was transferred to the Superior Court for Juvenile Matters. As part of that action, Mr. G. testified that he requested DNA testing, because he believed that the first paternity test had been manipulated. The results of that test also excluded Mr. G. as biological father of Michelle. There is no question that the Superior Court has authority to order paternity testing. CGS Chapter 815y. The Superior Court dismissed the case for lack of jurisdiction on January 29, 1998.
On February 18, 1998, Mr. G. appealed the Superior Court decision to the Appellate Court which ruled that due process requires that the Superior Court conduct an evidentiary hearing to determine whether the applicant is a father under the laws of this state or a former guardian.
An evidentiary hearing was held on October 6, 2000, November 7, 2000 December 15, 2000 and April 2, 2001. Mr. G. was represented by counsel and testified at the proceedings. The final date for the submission of all briefs by counsel was May 11, 2001.
Argument
The first issue is whether Mr. G. is Michelle's father. Mr. And Mrs. G. were legally married when Michelle was born. Both parents believed Mr. G. to be the child's father, he was named on the birth certificate and he testified that he conducted himself in a manner consistent with him being the child's father. He was therefore presumed to be Michelle's father. That presumption is, however, rebuttable, and has been rebutted by the results of two (2) paternity tests which rule him out as the biological father. At no point in the evidentiary hearing did Mr. G. present any evidence challenging the results of either of the paternity tests (other than his unsubstantiated testimony that he believed the first test to have been manipulated). And in fact, Mr. G. testified under oath on November 7, 2000, that he concedes that his is not the biological father of Michelle after having had the two (2) paternity tests.
Section 45a-604 of the Conn. Gen. Stats, defines "father" as "a man who is a father under the law of this state including a man who in accordance with section 46b-172, executes a binding acknowledgment of paternity and a man determined to be a father under chapter 815y." At the time of Michelle's birth, Mr. G. was presumed to be her father. It was not necessary for him to sign an acknowledgment of paternity because Michelle was not born out of wedlock. CGS Chapter 815y is the chapter which deals with paternity matters, including testing. Having heard no evidence which CT Page 12479 suggests that either of the paternity tests which excluded Mr. G. as Michelle's father were invalid or incorrect, this Court finds that George G. is not the father of Michelle G.
The second issue is whether Mr. G. is a former guardian of the child. CGS Sec. 45a-604 (6) defines "guardian" as one who has the authority and obligations of guardianship" as defined in subdivision (5) of this section". "Guardianship" is defined in subdivision (5) means:
 guardianship of the person of a minor, and includes: (A) The obligation of care and control; (B) the authority to make major decisions affecting the minor's welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment; and (c) upon the death of the minor, the authority to make decisions concerning funeral arrangements and the disposition of the body of the minor.
Mr. G. testified that he was notified by the Department of Children and Families upon the birth of the child; that he visited the child every day while she was in the hospital; and that he consented to the removal of his guardianship rights. Michelle was born on September 15, 1994, and went from the hospital into the care of the maternal grandmother at approximately two (2) weeks old. Mr. and Mrs. G. were removed as guardians on March 23, 1995. Until that date, Mr. and Mrs. G. remained Michelle'slegal guardians. Mr. G. testified that during this time he visited the child at the maternal grandmother's home; that he purchased things for the child, such as a car seat, diapers, clothing, etc.; that he took the child to at least two (2) doctor's appointments; that he gave the maternal grandmother money on occasion towards the care of the child; that the child was covered under his health insurance; and that he enjoyed a relationship with the child.
Many of these things were disputed by the maternal grandmother in her testimony, however, even taking into account the disputes and inconsistencies, it appears that Mr. G., believing that he was Michelle's father, was a guardian to Michelle and exercised his rights to the extent he was able with the child not being in his care. This Court makes no finding at this time as to whether Mr. G. was an adequate guardian or could or should have done more even in his limited circumstances. The Court finds that Mr. G. was a guardian to Michelle, if only for a brief period. He therefore had standing to file for reinstatement of his guardianship, and the Superior did have jurisdiction over the matter. CT Page 12480
This Court, having made the foregoing findings, will schedule the Application for Reinstatement of Guardianship for a judicial pretrial conference and further proceedings accordingly.
Patricia Lilly Harleston, J.